WESTBROOK et al. v. SWENSON et al.
No. 3233.

Court of Civil Appeals of Texas. Beaumont.

April 13, 1938.

Rehearing Denied April 27, 1938.

Howell & Howell, of Beaumont, for appellants.

D. F. Sanders, and J. A. Veillon, both of Beaumont, for appellees.

O'QUINN, Justice.

On September 28, 1936, L. E. Westbrook, J. D. Fuselier, Paul Meyer, O. O. Lawrence, Mrs. O. O. Lawrence, C. W. Fulbright, and L. P. Swenson, suing for the use and benefit of the Sadler Production Company, a corporation, and the stockholders of said corporation, brought this suit against S. B. Swenson, Mrs. S. B. Swenson, W. F. Peterson, and the Sadler Production Company to recover certain sums of money, to wit, from the defendants S. B. Swenson, Mrs. S. B. Swenson, W. F. Peterson, and the Sadler Production Company, both jointly and severally, the sum of $800, charged to have been appropriated by said defendants during the months of January, February, March, and April, 1936, out of moneys belonging to the corporation; and the sum of $1,625 charged to have been unlawfully appropriated by defendants as salaries during the months of May, June, July, August, and September, 1936, out of moneys belonging to said corporation; and against the defendant W. F. Peterson, individually, the sum of $225 charged to have been by him unlawfully appropriated out of moneys belonging to said corporation during the months of May, June, July, August, and September, 1936; and for judgment against S. B. Swenson and W. F. Peterson

for the return to said corporation and the cancellation of 10 shares of stock of said corporation which had been issued to said defendants; and for judgment against S. B. Swenson and W. F. Peterson, jointly and severally, for $500, that being the sum alleged to have been received by said defendants as dividends on said shares of stock, and for 6 per cent. interest on said sums from the several dates of their receipt by said defendants.

The defendants S. B. Swenson, Mrs. S. B. Swenson, W. F. Peterson, and the Sadler Production Company, corporation, answered by general demurrer, certain special exceptions, general denial, and specially that with the knowledge and consent of the majority of the stockholders and the approval of the board of directors of said corporation defendants S. B. Swenson and W. F. Peterson undertook to and did operate the lease of the corporation until the month of May, 1936, which resulted to the great advantage of the corporation in the reduction of its indebtedness; and the payment of dividends to its stockholders; that on January 4, 1936, at a special meeting of the stockholders of said corporation an order was made and carried into the minutes of the corporation authorizing the payment to defendants S. B. Swenson and W. F. Peterson of a salary for their past services in operating the lease and pay for future services to be rendered, which order or resolution was approved by the stockholders; and that at the same meeting of the board of directors of said corporation a resolution was duly adopted and entered on the minutes of said corporation giving complete and full charge of the operation of the affairs of the corporation to S. B. Swenson and W. F. Peterson and authorizing them to be paid for their past and future services rendered and to be rendered in the operation of the corporation's lease, same to be paid in cash or stock of the corporation, or both, at their option, which resolution was duly adopted by the board of directors of said corporation in pursuance to which they, S. B. Swenson and W. F. Peterson, received $1,800, and 20 (10 each) shares of stock for their services, all of which was fully known by the plaintiffs, and to which they made no objections, but permitted defendants to receive their said salaries and to perform their services, by reason of which they were estopped to complain.

They further specially answered that about May, — 1936, they, S. B. Swenson and W. F. Peterson, and a majority of the stockholders of the corporation, and the board of directors of said corporation, entered into a written contract to be effective as of April 1, 1936, whereby the affairs of the corporation were placed in the hands of said defendants and for the compromise and settlement of the claims of the corporation against said defendants and of the claims for salary and services of said defendants against the corporation, fully pleading all the terms and items so to be settled; and, further, that they accepted the settlement thus provided and carried out their part of said written contract in full, which said contract and its performance by defendants released them from any claim asserted by plaintiffs, and plaintiffs having accepted the benefits of said contract and the value of the services rendered by defendants, they, plaintiffs, were estopped to deny the validity of said contract, or to assert the alleged liability against defendants, and fully pleaded said contract and the services rendered by said defendants under same in bar of any recovery sought by plaintiffs. They further pleaded in the alternative which need not be set out.

The case was tried to a jury, but at the conclusion of the evidence the court instructed the jury to return a verdict for the defendants, which they did, and judgment was accordingly entered. This appeal is from that judgment.

The record reflects that the Sadler Production Company was a Texas corporation, and the parties plaintiffs and defendants were stockholders and officers of the corporation. Its assets consisted of a small lease situated in Liberty county, Tex., which had been developed for oil with small production, and had practically ceased to produce—was not paying operating expenses. Effort was made to raise money with which to rework one well and to continue pumping operations in order to raise production, but failed. The corporation was considerably in debt and had no money. By common consent and under an agreement of the directors and stockholders on January 4, 1936, defendants S. B. Swenson and W. F. Peterson undertook to operate the property and with considerable success. Some dissatisfaction arose relative to the conduct of the business by Swenson and Peterson, and also as to the disposition of the receipts of the enterprise, contention being made that Swenson and Peterson were wrongfully appropriating a portion of the proceeds to pay charges for services claimed to have been rendered by them and for things to be used in the operation of the lease. In May, 1936, to be effective as of April 1, 1936, the parties interested (the stockholders other than Swenson and Peterson) entered into a written contract or agreement with S. B. Swenson and W. F. Peterson (acting as individuals) as parties of the first part, and the other stockholders as parties of the second part, whereby they settled the differences and claims of the several parties, and turned the operation of the lease over completely to Swenson and Peterson for a period of six months. The contract reads:

"The State of Texas, }
County of Jefferson }

"Be it remembered, that the following contract and agreement entered into by and between S. B. Swenson and W. F. Peterson, hereinafter known as first parties, and the Sadler Production Company, a private corporation, together with all other stock holders owning any share or shares of stock in said corporation, hereinafter called second party.

"Witnesseth.

"This agreement shall become effective from the date of April 1, 1936, for a period of six months, subject to renewal at same time.

"2. For and in consideration of the sum of $150.00 per month effective April 1, 1936, paid and to be paid to S. B. Swenson and W. F. Peterson by the second party hereto, which said payment shall well and truly be made on or before the 15th day of each consecutive month during the life of this contract, the said S. B. Swenson and W. F. Peterson agree to devote their entire time personally to the affairs of second party in operation and production of petroleum on one certain lease located in South Liberty oil field in Liberty County, Texas, known and described as being a part of the M. G. White Survey in said County and being a part of a lease known as the Marrs-McLean lease which said lease is the property of Gulf Production Company having the right to operate same through an operating letter executed by the Gulf Production Company to Nat Sadler and assigned to Sadler Production Company, same lease containing ap-

proximately 20 acres of land; and any other lease that Sadler Production Company may hereinafter acquire.

"3. It is further agreed and understood by all parties hereto that the second party shall pay all operating expenses on said lease. By the term 'operating expenses' is meant the cost of additional labor that cannot be performed by the first parties hereto, any and all labor on machinery and equipment made necessary for the operation of the lease as well as the cost of any additional necessary equipment; cost of lubrication, etc. on machinery; expense of operation of power unit complete, labor, up-keep, fuel, lubricating oil and such other expense and out put of money as may be necessary thereon. By the term 'labor' used herein is meant such labor and replacement of parts as cannot be made by the said first parties hereto.

"4. The first parties hereto are to have actual charge of the operation of said lease and are to operate same in any manner that they may see fit, but, before any expenditure of money is made for the purpose of drilling new wells or purchase of any new or additional equipment, same must be ratified and confirmed by the stock holders of the corporation.

"5. It is further understood and agreed that first parties will, each month, give an itemized, detailed statement of all expenditures to the second party and furnish receipted bills or invoices for each item of expenditure made by the first parties and that all purchases hereinafter made by the first parties in the operation of said lease shall be made in the name of Sadler Production Company.

"6. Heretofore, the first parties to this contract reworked what is known as No. 2 well on said lease. For the reworking of this well, the first parties are to receive five shares each or a total of 10 shares of the capital stock of Sadler Production Company. Heretofore, there was issued to S. B. Swenson 10 shares of the capital stock of the Sadler Production Company and to W. F. Peterson 10 shares of the capital stock of the Sadler Production Company as a consideration of the reworking of said well No. 2. It is now agreed by the first parties hereto that 10 shares of such stock will be assigned to the corporation and will become treasury stock so that the consideration paid for the reworking for said No. 2 well will be 10 shares of said stock: 5

shares to S. B. Swenson and 5 shares to W. F. Peterson.

"7. It is further agreed by the parties hereto and is a part of the consideration of this contract that the salary hereinabove named shall continue to be paid to the first parties by the second parties until such time as the production of oil on said lease fails to be profitable. In this respect, what is profitable production of oil on said lease, shall be determined by the stockholders of Sadler Production Company. Any temporary shutting down of such wells made necessary by a breakdown or should said wells temporarily cease to produce oil in profitable quantities shall not be considered as a failure of such wells to produce oil in paying quantities or shall same be construed to terminate the employment hereinabove mentioned of the first parties.

"8. It is further agreed and understood by all the parties hereto that the Sadler Production Company does not have a truck on said lease at this time capable of doing the necessary work upon said lease usually required of a truck, and that the said Sadler Production Company will furnish to the first parties a truck sufficient to do the necessary work of a truck on said lease; or, in the alternative, if it sees fit, will pay to W. F. Peterson the sum of $45.00 per month for the use of his truck. Such payments, if the said W. F. Peterson furnishes a truck, to be made monthly on the 15th day of each month.

"9. It is further agreed and understood by the parties hereto that the first parties will assign to Sadler Production Company one simplex oil field power unit complete and will cancel, as a claim against said company, the expenses of equiping, re-working and overhauling and making up the tractor power now on said lease, will cancel all trucking expenses incurred prior to April 1, 1936, and will cancel the expenses of operating tractor and simplex power unit prior to April 1, 1936.

"10. It is further agreed and understood by the parties hereto that the first parties in signing this contract sign same as individuals and not as officials of the Sadler Production Company and each of the stock holders whose names are signed hereto sign same in the capacity of individuals as well as stock holders in the Sadler Production Company. No liability of any kind shall rest upon the first parties hereto in the operation of said lease and in no event, shall

they be held responsible for injuries or damages resulting to third parties. That they are not independent contractors, but employees of Sadler Production Company. Stockholders shall not be personally liable for salaries or any other expenses incurred in operation of lease or leases.

"This contract signed at Port Arthur, Texas, this the ——— day of May, A. D. 1936, in duplicate originals.

> "S. B. Swenson
> "W. F. Peterson
> "First Parties
> "Claude Foshee
> "Tony Galey
> "Mrs. S. B. Swenson
> "Mrs. O. O. Lawrence
> "L. E. Westbrook
> "L. P. Swenson
> "J. D. Fuselier, M. D.
> "Arthur A. Derrough
> "C. W. Fulbright
> "P. R. Meyer, M. D.
> "H. M. Rosen
> "Fred A. White, by G. M. M.
> "Nelson Swenson
> "Second Party."

■ This suit seeks to recover moneys and dividends arising out of the operation of the lease by Swenson and Peterson after January 4, 1936, and during the time covered in the written agreement. It is contended by appellees that the written contract settled and fully adjusted all the matters complained of by appellants occurring between January 4, 1936, up to April 1, 1936, the date of the written contract, and that said contract authorized each and all of the matters complained of occurring between April 1, 1936, and the expiration of the contract.

If this contention is sound, then the instructed verdict was proper. We have carefully considered all of the pleadings, and all of the evidence, and it is our opinion that they fully support the appellees' insistence, and so that the instructed verdict and consequent judgment was correct.

■ But appellants say that the contract does not appear to have been executed 'in accordance with law in that it was not shown to have been executed on the part of the corporation by any person or persons authorized to act for the corporation. The opening paragraph of the contract reads:

"Be it remembered, that the following contract and agreement entered into by and between S. B. Swenson and W. F. Peterson, hereinafter known as first parties, and the Sadler Production Company, a private corporation, together with all other stockholders owning any share or shares of stock in said corporation, hereinafter called second party.

"Witnesseth."

Then follows the contract, and it is signed by Swenson and Peterson, as first parties, and by plaintiffs and seven other persons, as second party. It states that the contract is executed by the corporation "with all other stockholders owning any share or shares of stock in said corporation, hereinafter called second party." Swenson and Peterson were stockholders, but they did not execute the contract as such, but as individuals, the contract so says (paragraph 10). The others signed as individuals as well as stockholders (paragraph 10). It does not appear that any stockholder refused to sign the contract, or objected to it in any way. To the contrary, the first parties, Swenson and Peterson, immediately took charge of the business of the corporation, and continuously operated same, paid the greater portion of its debts, and four dividends of 12½ per cent. each were declared and paid to each of the stockholders, which were accepted by them. In accordance with the contract, Swenson and Peterson surrendered to the corporation the 10 shares of stock mentioned in the contract, and same were canceled, and in lieu thereof 5 shares each were issued to and accepted by Swenson and Peterson. In short, the record shows that Swenson and Peterson fully performed their part of the contract, and plaintiffs (appellants) knowing of this performance accepted the benefits of same. This being true, they ratified and confirmed the contract and were estopped to question the binding force of the contract or to maintain their suit to recover from the defendants the fruits due them under the contract.

What we have said disposes of the case. The judgment should be affirmed and it is so ordered.

Affirmed.